TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-95-00371-CR







Michael Warner, Appellant



v.



The State of Texas, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0943732, HONORABLE JON N. WISSER, JUDGE PRESIDING








 This appeal is taken from convictions for aggravated kidnapping, aggravated assault,
and arson. See Tex. Penal Code Ann. §§ 20.04, 22.02, & 28.02 (West 1994 & Supp. 1997). (1) 
Appellant Michael Warner challenges his convictions in five points of error, alleging: (1) the
evidence was factually insufficient to support the aggravated assault conviction, (2) the trial court
erred in refusing to instruct the jury on a lesser included offense and causation, and (3) the trial court
erred in excluding evidence that Warner suffered from post-traumatic stress disorder (PTSD). We
will affirm the convictions.


BACKGROUND

 The victim, Suzanne Whitmore, testified at trial to the following events. Warner met
Whitmore in the fall of 1993 and moved into her home shortly thereafter. After about five or six
weeks, Whitmore asked Warner to leave. On January 7, 1994, Whitmore put Warner's belongings
outside in boxes in an effort to get him to move out. When Warner arrived at the house that
afternoon, he was angry and an altercation ensued.

 According to Whitmore, Warner grabbed her, threw her into a wall, hit her, twisted
her arm until it broke, and sat on her to hold her down. He then attempted to tie her up with a lariat,
but was unsuccessful. 

 Whitmore testified she did several things to neutralize the situation. First, she got up
and grabbed a soft-drink, attempting to placate Warner by pretending the situation was normal. Next
she took two loads of Warner's belongings back into the house. After the second trip, she escaped
from the house by climbing down from the second story on a rope. The entire episode, according
to Whitmore, lasted approximately an hour and a half.

 After escaping from the house, Whitmore ran to a neighbor's house where she called
the sheriff's department. Upon arrival at Whitmore's house, sheriff's deputies discovered the house
was on fire and Warner was in it. After a standoff, one of the deputies shot Warner in the arm and
took him into custody.

 Before trial, Warner gave notice that he wanted to introduce evidence that he suffers
from PTSD as a result of serving in the Vietnam war. The trial court held a hearing on the matter
and ruled that evidence of Warner's PTSD would not be admitted at the guilt phase of trial, but
would be admissible at the sentencing phase. 

 At the conclusion of the guilt stage of trial, the court instructed the jury on the
offenses of aggravated kidnapping, aggravated assault, and arson. Warner objected to the court's
failure to include an instruction to the jury on the offense of attempted aggravated kidnapping. The
trial court overruled his objection. The jury found Warner guilty of all three counts. 

 During the punishment phase, Warner introduced evidence that he suffered from
PTSD. The court sentenced Warner to confinement for forty-two years for aggravated kidnapping,
ten years for aggravated assault, and twenty years for arson, all three sentences to run concurrently. 


DISCUSSION

Instruction on Lesser Included Offense

 In his second point of error, (2) Warner claims that the trial court erred in failing to
instruct the jury on the lesser included offense of attempted aggravated kidnapping.

 Courts use a two-step analysis in determining whether an offense is chargeable as a
lesser included offense. See Royster v. State, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981). First,
the offense requested to be charged must be included within the proof necessary to establish the
offense charged in the indictment. Id. Second, there must be some evidence to permit the jury
rationally to find that if the defendant is guilty, he is guilty of only the lesser offense. Rousseau v.
State, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993); Royster, 622 S.W.2d at 446.

 The parties agree that the first part of the Royster test is satisfied in this case. The
issue presented, therefore, is whether the proof suggested that Warner was guilty only of the lesser
offense of attempted aggravated kidnapping.

 Warner contends he did not "substantially" interfere with Whitmore's liberty as
required by the kidnapping statute. See Tex. Penal Code Ann. § 20.01(1) (West 1994). (3) Instead,
Warner argues, he only attempted to interfere with Whitmore's liberty and points to the fact that he
was unable to tie her hands and feet at the same time. (4) Warner also argues that substantial
interference with liberty requires more than just momentary restraint. We disagree.

 First, section 20.01(a) does not specify any minimum length of time for which a
victim must be restrained. See Rodriguez v. State, 646 S.W.2d 524, 526 (Tex. App.--Houston [1st
Dist.] 1982, no pet.). Second, the fact that Whitmore was able to avoid having her hands and feet
tied simultaneously does not negate the fact that she was restrained for a certain period of time. 
Finally, the evidence suggests Warner physically restrained Whitmore substantially not only by tying
her up but also by sitting on her, holding her down, and warning her that he would not allow her to
escape. Based on these facts, we conclude the evidence did not show Warner was guilty only of
attempting to restrain Whitmore. Warner failed to satisfy the second element of the Royster test;
accordingly, we overrule his second point of error.


Evidence of PTSD

 In his third point of error, Warner argues the trial court erred in excluding from
evidence at the guilt-innocence stage testimony that he suffered from PTSD. Warner did not offer
the evidence to support an insanity defense; instead, he offered it to negate the specific intent
elements of the offenses of aggravated kidnapping and arson. 

 As a general rule, proof that an accused suffers from a mental weakness or emotional
disturbance short of the inability to distinguish right from wrong is not admissible at the guilt-innocence stage of trial. Cowles v. State, 510 S.W.2d 608, 609 (Tex. Crim. App. 1974). Warner
argues an exception to this rule applies when the crime charged is a specific intent crime. Warner
relies on dicta in Cowles to show evidence of mental infirmity not rising to the level of insanity is
admissible to negate a specific intent element. See id. at 610. Warner further contends aggravated
kidnapping and arson are specific intent crimes, and therefore, the trial court should have admitted
evidence of his PTSD. 

 We agree that aggravated kidnapping and arson are specific intent crimes. See Tex.
Penal Code Ann. §§ 20.04(a)(1)-(6), 28.02(a); Beltran v. State, 593 S.W.2d 688, 689 (Tex. Crim.
App. 1980) (arson); Brimage v. State, 918 S.W.2d 466, 475 (Tex. Crim. App. 1996) (kidnapping). 
We disagree, however, that the "Cowles exception" is alive in today's criminal jurisprudence. It is
important to note that the Cowles court discussed such an exception but did not apply it; Cowles
involved a non-specific intent crime, and the court applied the general rule to disallow evidence of
mental infirmity. In short, the exception mentioned in Cowles is twenty-three-year-old dicta. We
recognize Judge Maloney's concurring opinion in Penry v. State, in which he espoused his view that
the defense of diminished capacity is valid in Texas, based on the Cowles opinion. See Penry v.
State, 903 S.W.2d 715, 767-69 (Tex. Crim. App. 1995) (Maloney, J., concurring). The existence of
the diminished capacity defense in Texas was not an issue in Penry, however, and we note that Judge
Maloney's concurring opinion was dicta in that case as well.

 More importantly, Warner does not cite a single Texas case that applies the Cowles
exception in the face of a proper objection to the evidence by the State. (5)
 In fact, we find only one
case involving a specific intent crime and a defendant's attempt to invoke the Cowles exception. See
Wagner v. State, 687 S.W.2d 303, 310-12 (Tex. Crim. App. 1984) (opinion on rehearing). In
Wagner, the court of criminal appeals declined to allow evidence of the defendant's lack of impulse
control, despite the fact that intent was an issue in the case. See id. at 311-12. The reasons for which
the court declined to apply the Cowles exception are not entirely clear from the Wagner opinion. 
The court did conclude, however, that "lack of normal impulse control is simply not a circumstance
recognized by the legislature to diminish the criminal responsibility of an accused or reduce his
crime to a lesser included offense." The court reached its conclusion in answer to the defendant's
attempt to negate allegations that he intended the victim's death. In light of the court of criminal
appeals' conclusion in Wagner and the absence of authority to the contrary, we are compelled to
conclude that the general rule regarding evidence of mental infirmity holds true, even in cases
involving specific intent crimes. (6) We, therefore, hold the trial court did not err in failing to admit
testimony about Warner's post traumatic stress disorder at the guilt-innocence stage of trial. We
overrule Warner's third point of error.


Factual Sufficiency of the Evidence

 In his fifth point of error, Warner argues the evidence was factually insufficient to
support his conviction for aggravated assault. See Tex. Penal Code Ann. § 22.02. Warner was
charged with intentionally and knowingly causing serious bodily injury to Whitmore by fracturing
her arm. Warner challenges only the sufficiency of the evidence supporting the jury's determination
that he fractured Whitmore's arm. 

 In conducting a factual sufficiency review, we consider all the relevant evidence in
the record and reverse the judgment only if the verdict is so against the great weight of the evidence
presented at trial as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d 126, 133-32 (Tex.
Crim. App. 1996); Stone v. State, 823 S.W.2d 375, 379-81 (Tex. App.--Austin 1992, pet. ref'd
untimely filed). 

 At trial, Whitmore testified that during the fight, Warner tried to break her neck and
legs before breaking her right arm. She testified she remained calm, carried bags, and climbed
single-handedly down a rope from the second story of her house despite her broken arm in order to
de-escalate the situation, lull Warner into complacency, and survive. According to Whitmore, she
held the rope with her left hand while escaping because her right arm was broken. The State
introduced in evidence a photograph that shows Whitmore's left hand had rope burns she allegedly
sustained while escaping. The State reasons Whitmore would not have had the rope burns on her
left hand if she had used both hands to climb. 

 Warner, on the other hand, argues Whitmore broke her own arm while escaping. 
Warner reasons Whitmore could not have taken a break to drink a soda, carried his bags upstairs, and
climbed down the rope if he had first broken her arm. We hold that although the evidence is
conflicting, the jury's apparent determination that Warner broke Whitmore's right arm is not so
against the weight of the evidence as to be manifestly unjust. We overrule Warner's fifth point of
error.


Instruction on Causation

 In his fourth point of error, Warner contends the trial court erred in failing to instruct
the jury on causation with respect to the charge of aggravated assault. The trial court instructed the
jury:

 [I]f you believe from the evidence beyond a reasonable doubt, that the defendant,
Michael Warner, on or about the 7th day of January A.D. 1994, in the County of
Travis and State of Texas, did then and there intentionally or knowingly cause serious
bodily injury to Suzanne Jane Whitmore by fracturing her arm you will find the
defendant Michael Warner guilty of the offense of Aggravated Assault and say so by
your verdict, but if you do not so believe, or if you have a reasonable doubt thereof,
you will find the defendant not guilty of the offense of Aggravated Assault and
proceed to consider whether he is guilty of the lesser offense of Assault . . . . 


(Emphasis ours.) Warner argues the instruction was deficient because: (1) a conviction for
aggravated assault could be had only upon proof that Warner broke Whitmore's arm, (2) the
evidence conflicted as to the cause of Whitmore's broken arm, and (3) therefore that the court should
have instructed the jury that Warner was not guilty if a concurrent cause was sufficient to produce
the injury. See Tex. Penal Code Ann. §§ 6.04, 22.02 (West 1994). 

 Warner did not request the additional instruction at trial. We must decide, therefore,
whether the error, if any, was so egregious and created such harm that it deprived him of a fair and
impartial trial. See Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). We must
consider the trial as a whole in determining whether Warner suffered egregious harm. See Bonfanti
v. State, 686 S.W.2d 149 (Tex. Crim. App. 1985).

 Warner directs our attention to the scant evidence in the record supporting his theory
that Whitmore broke her own arm. Warner also alleges the jury's confusion over the issue of
causation was evidenced by two notes sent to the judge during deliberations, asking about the legal
consequences of different versions of the evidence regarding the cause of Whitmore's broken arm. (7)

 Neither the evidence nor the jury's notes show the omission of an additional
instruction on causation caused Warner egregious harm. The instruction the court gave simply and
clearly explained that a conviction for the offense of aggravated assault was predicated upon the
jury's finding that Warner directly broke Whitmore's arm. The jurors were effectively instructed
to find Warner not guilty of aggravated assault if they reasonably doubted that Warner directly
caused a break in Whitmore's arm. Furthermore, the jury may very well have had questions about
causation even if the court had given the additional instruction. Finally, the evidence supports the
jury's apparent determination that Warner was, in fact, directly responsible for Whitmore's injury. 
Based on the instruction given and the evidence as a whole, we conclude the trial court's failure to
give an additional instruction on causation did not so egregiously harm Warner that he received an
unfair or impartial trial. Assuming without deciding that the omission was error, we hold it was not
egregious and overrule Warner's fourth point of error.



CONCLUSION

 Having overruled Warner's points of error, we affirm the judgment of conviction.



 _____________________________________________

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Affirmed

Filed: May 8, 1997

Publish
1. The applicable statutes are those in effect at the time the offense was committed. The statute
setting forth the offense of aggravated kidnapping has been amended since the crime was committed. 
The amendments were not relevant to the issues in this case; we, therefore, cite to the current code
for convenience.
2. Warner waived his first point of error during oral argument.
3. The kidnapping statute requires the State to prove, inter alia, that the defendant intended to
abduct another person. See Tex. Penal Code Ann. § 20.04. "Abduct" means to restrain a person
with intent to prevent his liberation by one of several methods listed in the statute. See Tex. Penal
Code Ann. § 20.01(2). "Restrain" means "to restrict a person's movements without consent, so as
to interfere substantially with his liberty, by moving him from one place to another or by confining 
him. . . . " Tex. Penal Code Ann. § 20.01(a) (emphasis added). 
4. Whitmore testified that "[Warner] was attempting to tie up my hands and my feet. And when
he tied my hands up, I managed to fix it so that I had space - space in the rope so that when he went
to tie my feet up, I was able to get my hands free . . ."
5. Warner does cite Fielder v. State, in which the court of criminal appeals held it was error not
to allow the defendant to present testimony that she suffered from "Battered Women's Syndrome"
at the guilt-innocence stage of trial. See Fielder v. State, 756 S.W.2d 309, 318-21 (Tex. Crim. App.
1988). Fielder is distinguishable from this case; the court in Fielder did not purport to base its
holding on the Cowles exception. Furthermore, the case involved a specific statute which related
to the admissibility of evidence in homicide prosecutions. See Tex. Code Crim. Proc. art. 38.36(a)
(West Supp. 1997) (formerly Tex. Penal Code § 19.06). Fielder simply did not concern the issue
of whether evidence of mental infirmity is admissible to negate specific intent, absent a specific
statute authorizing the admission of such evidence.


 Warner also cites Moore v. State, a criminal mischief case in which the court held it was
reversible error to exclude evidence that the defendant suffered from a "panic attack" at the time of
the offense. See Moore v. State, 836 S.W.2d 255 (Tex. App.--Texarkana 1992, pet. ref'd). Moore
is inapposite to this case. Criminal mischief is not a specific intent crime. See Tex. Penal Code Ann.
§ 28.03(a) (West 1994). The Moore court did not rely upon Cowles in reaching its decision. In fact,
Moore seems to contradict the general rule espoused in Cowles. Therefore, we do not rely upon
Moore.


6. The State cites several cases for the proposition that there is no defense of diminished capacity
in Texas. See Werner v. State, 711 S.W.2d 639 (Tex. Crim. App. 1986); Thomas v. State, 886
S.W.2d 388 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd); Cox v. State, 843 S.W.2d 750 (Tex.
App.--El Paso 1992, pet. ref'd); Miller v. State, 770 S.W.2d 865 (Tex. App.--Austin 1989, pet.
ref'd); De La Garza v. State, 650 S.W.2d 870 (Tex. App.--San Antonio 1983, pet. ref'd). Although
we agree with the State's argument, we do not rely upon the above authorities in reaching our
conclusion. Those cases all involved non-specific intent crimes; therefore, the existence or non-existence of the Cowles exception was not at issue in those cases.
7. The jury's first note asked "if [Warner] broke the arm (perhaps hairline) but [Whitmore's] jump
and fall caused the compound fracture to cause permanent loss could [Warner] be guilty of
aggravated assault." (Emphasis by jury.) The second note asked "if [Whitmore] broke her arm in
the process of escape from defendant would [Warner] still be liable for aggravated assault."
(Emphasis by jury.)



BR1">

CONCLUSION

 Having overruled Warner's points of error, we affirm the judgment of conviction.



 _____________________________________________

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Affirmed

Filed: May 8, 1997

Publish
1. The applicable statutes are those in effect at the time the offense was committed. The statute
setting forth the offense of aggravated kidnapping has been amended since the crime was committed. 
The amendments were not relevant to the issues in this case; we, therefore, cite to the current code
for convenience.
2. Warner waived his first point of error during oral argument.
3. The kidnapping statute requires the State to prove, inter alia, that the defendant intended to
abduct another person. See Tex. Penal Code Ann. § 20.04. "Abduct" means to restrain a person
with intent to prevent his liberation by one of several methods listed in the statute. See Tex. Penal
Code Ann. § 20.01(2). "Restrain" means "to restrict a person's movements without consent, so as
to interfere substantially with his liberty, by moving him from one place to another or by confining 
him. . . . " Tex. Penal Code Ann. § 20.01(a) (emphasis added). 
4. Whitmore testified that "[Warner] was attempting to tie up my hands and my feet. And when
he tied my hands up, I managed to fix it so that I had space - space in the rope so that when he went
to tie my feet up, I was able to get my hands free . . ."
5. Warner does cite Fielder v. State, in which the court of criminal appeals held it was error not
to allow the defendant to present testimony that she suffered from "Battered Women's Syndrome"
at the guilt-innocence stage of trial. See Fielder v. State, 756 S.W.2d 309, 318-21 (Tex. Crim. App.
1988). Fielder is distinguishable from this case; the court in Fielder did not purport to base its
holding on the Cowles exception. Furthermore, the case involved a specific statute which related
to the admissibility of evidence in homicide prosecutions. See Tex. Code Crim. Proc. art. 38.36(a)
(West Supp. 1997) (formerly Tex. Penal Code § 19.06). Fielder simply did not concern the issue
of whether evidence of mental infirmity is admissible to negate specific intent, absent a spe